# IN THE SUPREME COURT OF TEXAS

═══════════
No. 08-0751
═══════════

TEXAS MUTUAL INSURANCE COMPANY, PETITIONER,

v.

TIMOTHY J. RUTTIGER, RESPONDENT

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════

JUSTICE WILLETT, concurring.

I join the Court's opinion but write separately on Part V to emphasize this overlooked truism: It is principally the judiciary's role to define and delimit common-law causes of action. In our constitutional design, the judicial branch is a partner, but not a junior partner[1]—and shaping Texas common law is fundamentally a judicial prerogative.

\*     \*     \*

Today the Court overrules *Aranda v. Insurance Co. of North America*[2] and holds a common-law action for bad faith is no longer warranted in the workers' compensation context. I agree. The dissent avers the proper inquiry is whether the Legislature intended to abrogate extra-statutory *Aranda* claims when it amended the Workers' Compensation Act in 1989. Respectfully, this focus

---

[1] *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 475 (Tex. 2011) (Willett, J., concurring in part and dissenting in part).

[2] 748 S.W.2d 210 (Tex. 1988).

on legislative action is misplaced, at least in this case. To be sure, the Legislature has some power to override or otherwise limit common-law remedies.[3] However, this is a high hurdle, one clearly uncleared here.[4] As such, the search for some *legislative* suggestion on whether *Aranda* should survive—an inquiry both the majority and the dissent eventually entertain—is at best fruitless, and at worst, dangerously speculative.[5] The more proper inquiry, respectfully, is whether the Court believes *Aranda* still has a place, not whether the Legislature believes so.

Statutory abrogation is not the sole way to re-think a common-law cause of action. In determining the continued vitality of the bad-faith remedy in workers' compensation cases, I would pivot on something simpler: this Court's nonpareil role as arbiter of the common law. It is the duty of the *judicial* branch to declare what the common law is: "The law is not static; and the courts, whenever reason and equity demand, have been the primary instruments for changing the common law through a continual re-evaluation of common law concepts in light of current conditions."[6] This charge is indeed an ongoing one: "[T]he common law is not frozen or stagnant, but evolving, and

---

[3] *See Middleton v. Tex. Power & Light Co.,* 185 S.W. 556, 560–61 (Tex. 1916).

[4] *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000).

[5] The separate writings here demonstrate—again—the perils of consulting legislative history. The Court criticizes the dissent for relying on changes made to a bill during the legislative process, calling it "illogical speculation." *Ante* at __. But one sentence later, the Court posits an alternate explanation for the same legislative history, declaring it "[m]ore logical speculation." *Id.* Though the Court rightly dismisses both arguments as inappropriate, this is yet another reminder that legislative history, often turbid and thus prone to contrivance, serves as an ever-present judicial mercenary, embraced when helpful and ignored when not. As Justice Robert Jackson wryly observed, "It is a poor cause that cannot find some plausible support in legislative history." Robert H. Jackson, *Problems of Statutory Interpretation*, 8 F.R.D. 121, 125 (1948); *see also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 568 (2005) (repeating Judge Leventhal's memorable phrase that rummaging around in legislative minutiae resembles "looking over a crowd and picking out your friends" (internal citations omitted)).

[6] *Whittlesey v. Miller*, 572 S.W.2d 665, 668 (Tex. 1978).

it is the duty of this [C]ourt to recognize that evolution."[7]  Accordingly, we are called upon to re-evaluate common-law rules, giving deference to *stare decisis* when warranted, but departing when the prior rule no longer furthers the interests of efficiency, fairness, and legitimacy.[8]  As we noted 142 years ago, "When the reason of the rule fails, the rule itself should cease. *Cessante ratione legis, cessat ipsa lex.*"[9]

This axiom is sufficient to resolve today's case because, as the Court so ably details, the "reason" behind *Aranda* is no more.  When we extended the duty of good faith and fair dealing to workers' compensation carriers in *Aranda*, we did so because of the "special trust relationship" between a carrier and an employee.[10]  This relationship does not exist in every contractual agreement, but we recognized it in the workers' compensation context because of employees' particular vulnerability.  Under the pre-1989 comp system, there was a tremendous disparity of bargaining power, leaving employees with little to no recourse against arbitrary payment decisions.[11]  Concerned with such inadequacies, we allowed a common-law remedy for bad faith to fill the gap.

A year later, the gap was made less gaping.  Observers may dispute whether the Legislature's 1989 overhaul *eliminated* the bargaining disparity between carriers and employees, but it is indisputable that the top-to-bottom reforms enacted then (and since) have *lessened* the concerns that

---

[7] *El Chico Corp. v. Poole*, 732 S.W.2d 306, 310 (Tex. 1987).

[8] *See Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008).

[9] *Wright's Adm'x v. Donnell*, 34 Tex. 291, 306 (1870).

[10] *Aranda*, 748 S.W.2d at 212.

[11] *Id.* at 212–13.

animated *Aranda*. By providing a strict dispute resolution timeline, a mechanism for interlocutory benefits, penalties for myriad carrier misdeeds, assistance for injured workers, and a litany of other protections throughout the Labor and Insurance Codes, the Legislature has endeavored to occupy the realm of claims handling and reduce the inequities that drove us to announce a common-law duty. My review today of the Legislature's pervasive workers' comp regime convinces me that (1) *Aranda*'s concerns with carrier misbehavior have been addressed, and therefore (2) *Aranda*'s cumulative extra-statutory remedy should now recede.

Otherwise, there is a very real possibility that the continued existence of bad-faith claims will subvert the Legislature's meticulous soup-to-nuts system, one augmented by an immense regulatory and adjudicatory framework that, taken together, now regulates virtually every aspect of how a carrier handles a workers' comp matter. In the past, this Court has been hesitant to extend common-law causes of action into fields where a pervasive regulatory scheme controls, specifically because of this potential for interference.[12] We should exercise similar deference when considering whether to draw back an extra-statutory remedy in light of legislative changes.

The Legislature's radical 1989 restructuring certainly made room for our 1988 *Aranda* decision, but that to me suggests not affirmation but accommodation. In any case, whether lawmakers acknowledged *Aranda* out of politeness (the Supreme Court says bad-faith claims must

---

[12] *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010) (noting that an extra-statutory negligence claim would "collide with the elaborately crafted statutory scheme" covering workplace harassment); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (declining to impose a duty of good faith and fair dealing on the employment relationship because that "would tend to subvert those [statutes regulating the employment relationship] by allowing employees to make an end-run around the procedural requirements and specific remedies the existing statutes establish").

exist) or deliberateness (the Legislature agrees such claims must exist), it is *our* decision whether the bad-faith remedy retains any role as a leveler or equalizer within a pervasive statutory scheme that controls claims handling in minute detail and bears little resemblance to the inequitable pre-*Aranda* landscape.

Our 2010 *Waffle House* decision is instructive. There, we considered whether the plaintiff could bring a common-law negligence claim against her employer in light of the TCHRA's "unique set of substantive rules and procedures" governing sexual harassment.[13] We answered that she could not after determining that the differences between the two causes of action—in procedure, and standards, and remedies—were "manifold."[14] Because of those differences, we rejected the common-law claim for fear of circumventing the "meticulous legislative design."[15] We could apply the same analysis here because the inherently fuzzy nature of the bad-faith tort has a tendency to produce conflicting liability standards inconsistent with the Legislature's statutory approach to carrier malfeasance and accountability.[16] I think it unwise to invite these potential complications, particularly in an area so imbued with public policy trade-offs, and where the Legislature has specifically addressed our concerns over how comp claims are processed.

---

[13] *See Waffle House*, 313 S.W.3d at 803–04.

[14] *Id.* at 805–07.

[15] *Id.* at 805.

[16] *See Universal Life Ins. Co. v. Giles*, 950 S.W.2d 48, 62–65 (Tex. 1997) (Hecht, J., concurring) (observing that bad-faith actions are often seen as "the judicial equivalent of the Wheel of Fortune" because the jury determines the facts *and* the standards to be applied on an *ad hoc* basis); *see also Waffle House*, 313 S.W.3d at 804 (noting that the workers' compensation scheme incorporates a legislative attempt to balance the various interests and concerns of employees and employers).

*Aranda* was rooted in specific claims-handling inequities in the pre-1989 comp system, inequities the Legislature has re-balanced. Accordingly, in light of the Legislature's hermetic workers' compensation regime, the time has come for the Court—exercising *its* authority to define and delimit common-law remedies—to overrule *Aranda*, a judicial gap-filler whose underlying rationale no longer exists.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** June 22, 2012